NATIONAL CITY BANK OF NEW YORK v. PACIFIC CO.

(Supreme Court, Appellate Division, First Department.   January 11, 1907.)

1. EVIDENCE—DECLARATIONS—LETTERS OF PARTY.
    In an action to recover charges for transmitting money to a foreign country, defendant contended that the premium paid a foreign bank was unauthorized, and introduced in evidence a letter of plaintiff's agent to defendant's president in which it was stated that such premium would probably be charged.   *Held,* that defendant could not also introduce the president's reply, in which he refused to authorize such charge, as it contradicted the terms of the agreement stated in the first letter introduced by defendant, and was merely a declaration of the president as to his understanding of the agreement.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 1075.]

2. NEW TRIAL—GROUNDS—WRONGFUL ADMISSION OF EVIDENCE.
    The trial court is justified in setting aside a verdict because of the wrongful admission of evidence.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, New Trial, § 51.]

3. TRIAL—DIRECTION OF VERDICT.
    In an action to recover charges for transmitting money to a foreign country, defendant admitted all the allegations of the complaint, but alleged that a premium paid a foreign bank by plaintiff was not made at the request or for the benefit of defendant.   Plaintiff presented proof of all its allegations, together with evidence that it informed defendant that it would probably have to pay a premium for sending the money.   *Held,* that defendant's allegation as to the payment of the premium amounted to a conclusion, and a verdict should have been directed for plaintiff at the close of the evidence.
    Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by the National City Bank of New York against the Pacific Company.   Verdict for defendant, which was set aside, and a new trial granted, and defendant appeals.   Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Francis G. Gaffey, for appellant.
John A. Garver, for respondent.

INGRAHAM, J.   This action was brought to recover the sum of $912.35, expended by the plaintiff at the request of the defendant in transmitting a sum of money from New York to Lima, Peru, by cable. The question in dispute was the amount of a premium paid by the plaintiff to a London bank for transmitting the money, amounting to $1,829.-06.   The defendant paid to the plaintiff the sum of $50,000; the plaintiff claiming that the cost of the transaction, including its commissions, was $50,912.35, which included the disputed charge.   The complaint alleges:

That "on November 22, 1904, the defendant requested the plaintiff to transfer by cable, to one Di Fomento, at Lima, Peru, the sum of 10,000 Peruvian pounds, in Peruvian money, and to effect such transfer by the following morning; that the plaintiff. duly made said transfer through the London City & Midland Bank of London, England, which was a proper method of effecting the said transfer, and paid the said bank therefor $50,644.48; that the plaintiff expended $24 for cable messages in connection with the said transaction, and its commission amounted to $243.87, making the total amount laid out and expended, in effecting the said transfer, including the plaintiff's commission, $50,-912.35, of which the defendant has paid only $50,000, leaving a balance of $912.35."

The answer admits that on November 22, 1904, the defendant requested the plaintiff to transfer the money by cable as alleged in the complaint; that the plaintiff effected the transfer and the payment of 10,000 Peruvian pounds to the said Minister Di Fomento at Lima, Peru, through the London City & Midland Bank of London, England, and paid to said London bank therefor $50,644.48; that the plaintiff expended $24 for cable messages in connection with the said transaction, and that the plaintiff's commission amounted to $243.87, making the total amount laid out and expended in effecting the said transfer, including the plaintiff's commission, $50,912.35; that the defendant has paid to the plaintiff only $50,000; that the sum of $24 for cable messages and $48,815.42 were paid out and expended by the plaintiff at the request of defendant—and alleges that:

"The defendant did not request any part thereof to be paid to said London bank, the plaintiff having itself chosen said London bank as a medium for effecting said transfer to said Minister Di Fomento, and in effecting said transfer having paid out $1,829.06 improperly and without request from the defendant."

The answer further alleges that the plaintiff "laid out and expended $1,829.06 without the request of and without benefit to the defendant." The answer then alleges payment, and these facts are again alleged by way of counterclaim; the defendant seeking to recover from the plaintiff the balance of $50,000 paid by defendant to the plaintiff, after deducting the amount of the plaintiff's account less the alleged improper charge of $1,829.06. The answer, therefore, expressly admits the employment of the plaintiff by the defendant to effect this transfer of money to Peru, and that in so effecting this transfer the plaintiff actually paid out this sum of $1,829.06; then alleges that this sum of $1,829.06, paid out by the plaintiff to the correspondent to effect the transfer of the money to Peru, was paid without the request of, and was therefore not binding upon, the defendant.

The plaintiff called the head of its foreign exchange department as a witness, and upon cross-examination by the defendant he testified that the president of the defendant called upon him on the 22d day of November, 1904; that he told defendant's president "about a premium or other charge having to be paid in London" in making this transmission; that the defendant would probably have to pay a premium on it, seeing that a specific kind of currency was required to be paid into the Ministry of Foreign Affairs in Lima, and had to be paid the next morning; that a premium would have to be paid in London; that there was a decided difference between a transfer by cable and any

other transfer; on a transfer by cable the money is paid here in New York to-day, and probably paid out as fast as the cable can reach the other point in Peru. He testified that this transfer was ordered in the afternoon, and was to be paid out at Lima the next morning before 12 o'clock; that if the transfer had been made by mail it would have taken from four to five weeks before the concern in Peru would have got the money, and "the difference between the telegraphic transfer and the mail remittance is taken into account as the premium. The premium is computed on the basis of the shipment of that amount of money in actual money, freight, insurance, loss in time while in transit," etc.; that a cable transfer is simply transferring the credit from one to the other, but that all has to be paid for; that the president of the defendant instructed the plaintiff to go ahead and make the transfer.

The defendant then offered in evidence a letter of the witness to the defendant's president, which called the defendant's president's attention to the fact that defendant might have to pay a premium, and that defendant's president informed the writer of the letter that it was thoroughly understood by the defendant and to go ahead with the matter. This was on the cross-examination of the plaintiff's witness; the defendant making him its witness for this purpose. The defendant, having introduced a letter of the plaintiff's agent to the defendant's president, then offered in evidence the reply of its president, which contained his account of the agreement. This was objected to by the plaintiff, which objection was overruled, and the plaintiff excepted.

It is quite clear that this letter was incompetent. It was not answered, nor did it seem to call for an answer. It contradicted the terms of the agreement as stated in the letter introduced by the defendant, under which the plaintiff acted, and could have been of no relevancy, except as a declaration of the defendant's president as to his understanding of the agreement. If the plaintiff had introduced this letter to the defendant in evidence, then, of course, the defendant would have been entitled to prove the reply; but the defendant, having proved plaintiff's agent's letter against the objection of the plaintiff, could not make the reply competent as against the plaintiff. The admission of this letter being error, the court below was justified in setting aside the verdict.

Under the pleadings, however, I think there was no question for the jury, and that the plaintiff was entitled to the direction of a verdict. The complaint alleges that on the 22d of November, 1904, the defendant requested the plaintiff to transfer by cable to Peru the sum of 10,000 Peruvian pounds. The answer admits this allegation. The complaint then alleges that the plaintiff made the said transfer through the London City & Midland Bank of London, and paid the said bank therefor $50,644.48. That allegation is also admitted in the answer, coupled with an allegation that the plaintiff laid out and expended $1,829.06 without the request of and without benefit to the defendant. The plaintiff thus having alleged and the defendant admitted the request to make the remittance, and the plaintiff having actually made the remittance as requested and paid therefor the cost of making such remittance, the plaintiff was entitled to be repaid the cost of making this transfer, unless there was evidence of bad faith. The plaintiff was

employed to effect such transfer of money, and actually and in good faith paid the necessary disbursements to accomplish the transfer, and it is therefore entitled to repayment for the disbursements incurred. There is no allegation in the answer that this disbursement was not a necessary and proper one for the purpose of remitting the money to Peru. The allegation in the answer that the payment was not made at the request of and for the benefit of the defendant is the allegation of a conclusion, and does not present an issue as to the good faith of the plaintiff in making the payment to the London bank as the charge incurred by it for making the remittance. The testimony of the plaintiff's employé that he told the defendant that it would probably have to pay a premium for remitting this sum, and that the remittance would be made through the plaintiff's London correspondents, which was not contradicted by the defendant's president in his testimony, justified the plaintiff in making the transfer through London, and made the defendant liable for the necessary charges paid by the plaintiff in London for transmitting this money to Peru.

At the end of all the testimony the plaintiff moved for the direction of a verdict in its favor on the ground that, the allegations of the complaint having been admitted and proved without controversy, the plaintiff was entitled to a verdict. This motion was denied, and the plaintiff excepted. I think this motion should have been granted, and for that reason the court was justified in setting aside the verdict. There was clearly no question here to be submitted to the jury. The court seems to have left a question of law for the jury's determination, who found a verdict for the defendant, which was not justified by the pleadings or the evidence.

It follows that the order appealed from should be affirmed, with costs.

PATTERSON, P. J., and CLARKE and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting). I am of opinion that the learned trial justice erred in setting aside the verdict. According to his memorandum opinion, this was done upon the theory that all of the material allegations of the complaint were admitted by the answer, and that therefore he erred in admitting evidence of separate defenses setting forth a different contract from that alleged in the complaint and admitted. The rule that an affirmative defense, setting up a contract inconsistent with the contract alleged in the complaint and admitted by the answer, does not present an issue, is well settled (Fleischman v. Stern, 90 N. Y. 110); but I think it has no application to the case at bar. Here the plaintiff alleges that on the 22d day of November, 1904, it was requested by the defendant to transfer by cable to an individual at Lima, Peru, the sum of 10,000 Peruvian pounds in Peruvian money by the following morning; that plaintiff duly made the transfer through a London bank, its correspondent, "which was a proper method of effecting said transfer," and paid the bank therefor the sum of $50,-644.48, and expended $24 for cable messages, and that its commissions amounted to $243.87, "making the total amount laid out and expended in effecting said transfer, including the plaintiff's commissions, $50,-

912.35, of which the defendant has paid only $50,000, leaving a balance of $912.35," for which judgment was demanded. The answer admits the employment, that plaintiff laid out and expended in making the transfer the amount specified in the complaint, the charge for cable messages and for commissions, and also admits that all of the amounts so paid out, excepting the sum of $1,829.06, was paid and expended by the plaintiff at the request of and for the benefit of the defendant, but denies that the defendant requested that plaintiff transmit the money through the London bank, and alleges that, in effecting the transfer, the defendant selected the London bank as a medium, and paid out the sum of $1,829.06, of the total amount alleged to have been expended, improperly and without the request of the defendant, and denies that it has any knowledge or information sufficient to form a belief as to whether making the transfer through the London bank was a proper method of effecting the same, and denies that there is any balance owing to the plaintiff.

The plaintiff neither alleges that the amount expended by it in making the transfer was necessarily expended, nor that it was expended at the request of the defendant. In this regard, I think the complaint was defective; but that is not the question now before us for adjudication. It was essential to the plaintiff's right to recover that it show either of these facts. If the plaintiff had merely alleged that it expended $5,000,000 in making the transfer, I presume it would not be seriously contended that because the defendant ascertained that this was true, and therefore was obliged to admit it, plaintiff would be entitled to recover that amount, without showing necessity or authority for such expenditure. The amount of the expenditure does not affect the principle, and the admissions and denials in the defendant's answer and the allegations of fact in connection therewith were clearly designed to present the issue as to whether this expenditure of $1,829.06 to the London bank was necessary or authorized. The further allegations in the separate defense were designed to present the same issue. The answer alleges, as a separate defense, that the defendant expended the sum of $1,829.06, without the request of the defendant and without benefit to it, and that the plaintiff had been fully paid for the services rendered. It also set up, by way of counterclaim, that the plaintiff only paid and expended, at the request of the defendant, the sum of $48,839.42, which leaves the sum of $916.71 due and owing to the defendant of its deposit of $50,000, after deducting the cable charges and plaintiff's commissions, for which amount judgment is demanded. The plaintiff recognized that the answer put in issue the question of the necessity of or authority for the expenditure of $1,829.06 by its reply, in which it denies that it did not expend more than $48,839.42 at the request of or for the benefit of the defendant, and by assuming the affirmative of that issue upon the trial. The case was tried upon the theory that the pleadings presented this issue.

The plaintiff called an employé, who was at the head of its foreign exchange department and transacted this business. He testified that transferring the money through the London bank was a usual method of effecting a transfer, and that the plaintiff could not make a direct

transfer. The witness testified that the item of $1,829.06, which was in dispute, consisted of a charge of 3¾ per cent. premium by the London bank. He admitted that Mr. Scott, who represented the defendant, had come to him, representing the plaintiff, through an introduction by a mutual friend, that Scott told him what others would charge for making the transfer, and that he informed Scott that the plaintiff would do it as cheap as any other bank; but he testified that he told Scott that he thought he would have to pay a premium in London, owing to the fact that a specific kind of currency was required to be paid in Peru, but that he was not certain about that, and that Scott replied to go ahead, and the defendant would take chances on it. A letter written by this witness to Mr. Scott, the president of the defendant, after the latter objected to this charge, shows that he was informed by the plaintiff's London correspondent, by a letter which he quoted, that the charge was made owing to the fact that on that day the Peruvian pound was at 3¾ per cent. premium in Peru, and that in order to make the payment in Peruvian pounds, in accordance with the defendant's wishes, it was necessary to pay that premium in London. Mr. Scott testified positively that it was distinctly understood between him and the plaintiff's representative that it was immaterial to the defendant whether the money was sent through London or direct, provided it would be sent by the plaintiff at the same rate at which others, who could make direct transmission, had offered to transmit it, which was one-half of 1 per cent. and the cable charges, to which plaintiff's representative agreed. He also testified that it was suggested that there might be a premium on Peruvian gold in Lima on that day, and that he told the plaintiff's representative that there never had been such a thing, but that, if there should be, the defendant would pay it. This witness testified that he was familiar with the money markets of the world; that he never knew of the Peruvian pound being at a premium in Peru. The testimony of Mr. Scott, the president of the defendant, was corroborated by that of the treasurer of the defendant. A member of the Lima bar, called as a witness for the defendant, testified that he was formerly minister from Peru to this country, that the English pound sterling and the Peruvian libra or pound were interchangeable at par, and that this condition had existed continuously since the establishment of the gold standard in the year 1896 or 1897.

I am of opinion that this evidence presented a fair question of fact for the jury, and that their verdict in favor of the defendant should not have been disturbed. According to the testimony introduced in behalf of the defendant, which I think preponderated, the jury were justified in finding that other banks having direct lines of transmission to Peru had offered to transmit this money without any charge, except their commissions and the cable expenses; that the defendant took the business to the plaintiff as a matter of friendship, and that plaintiff agreed to transmit the money upon the same basis, with the suggestion merely that if there was a premium on the Peruvian pound in Lima, there would be a premium charge in London, which the defendant agreed to pay; that there was no premium on the Peruvian pound in Lima on that day, and that this premium charge by plaintiff's London correspondent was based on an erroneous theory and claim

that there was, and that it was therefore an unnecessary and unauthorized expense, not properly chargeable to the defendant.

For these reasons, I am of opinion that the order should be reversed, and the verdict reinstated.